# IN THE COURT OF APPEALS OF IOWA

No. 21-1864
Filed July 13, 2023

**CARLOS RAFAEL NAVARRETTE,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Scott County, Stuart Werling, Judge.

An applicant appeals the denial of his postconviction-relief application.
**AFFIRMED.**

Thomas Hurd of the Law Office of Thomas Hurd, PLC, Des Moines, for appellant.

Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee State.

Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**SCHUMACHER, Presiding Judge.**

Carlos Navarrette appeals the denial of his post-conviction relief (PCR) application. He claims his trial counsel was ineffective in failing to investigate the possibility of certain defenses and in failing to obtain an expert witness. We find Navarrette's trial counsel did not breach an essential duty. Accordingly, we affirm.

## I.     Background Facts & Proceedings

Navarrette was charged with four counts of second-degree sex abuse and one count of lascivious acts with a child in 2013. The charges stemmed from sexual abuse Navarrette committed against two children, A.N. and C.N., between 2010 and 2012. The children made allegations of sexual abuse perpetrated by Navarrette to their mother, police, and Dr. Barbara Harre, a child abuse pediatrician and director of the Davenport Child Protection Response Center.

Navarrette's trial counsel focused on a theory that the children were coached by their mother, who was angry with Navarrette for having a second family at the same time that he was dating the mother. Navarrette's counsel hired Tina Flaherty, a licensed independent social worker, to review the children's interview with Dr. Harre. Trial counsel tasked Flaherty with determining whether the interview process complied with forensic interviewing techniques. While Navarrette's counsel did not plan to hire Flaherty as an expert witness,[1] he hoped the report would shed light on whether it would be worthwhile to hire an expert. In her report, Flaherty noted some technical errors in the interview but ultimately found the errors were too minor to undermine the reliability of the children's

---

[1] Navarrette's counsel knew Flaherty personally and believed that fact could be used to undermine her credibility as an expert witness.

statements. As a result, Navarrette's counsel did not obtain an expert witness on issues related to the reliability of the children's statements.

A bench trial was held in 2014. Consistent with counsel's prior strategy, the defense focused on a theme of the mother coaching the children. The defense presented no witnesses but offered text messages showing the mother of the children was upset with Navarrette around the time the allegations surfaced. While defense counsel did interview the potential witnesses suggested by Navarrette, none of the three testified, either because of immigration concerns or because the information they possessed was irrelevant. The district court found Navarrette guilty on all charges. In doing so, the court expressly found the children credible. The court elaborated:

> The court found the victims' testimony extremely credible for many reasons. Their mother testified they did not want to be alone with the defendant, a sign of an abusive relationship. There was evidence presented that A.N. and C.N. are now having behavior problems consistent with sexual abuse victims. The victims were very obviously afraid of the defendant in court and could not out of fear even look directly at him. They wept and trembled recalling the abuse. They were not hesitant in describing the abuse or confused as to what took place. They have been consistent in telling their stories and facts as to what took place to their mother, Dr. Harre, and in court. . . . There was no evidence contradicting or discrediting their testimony.

Navarrette appealed, claiming his trial counsel was ineffective for failing to object to prior bad acts evidence and failing to object to inferences the district court drew in its findings of fact. *State v. Navarrette*, No. 14-0662, 2015 WL 1817041, at *1 (Iowa Ct. App. Apr. 22, 2015). This court upheld the convictions. *Id.* at *2. In doing so, the appellate court found it was unnecessary to examine whether counsel breached an essential duty because there was "overwhelming evidentiary

support for the district court's findings of guilt." *Id.* at *1. In particular, the court highlighted the district court's findings related to the children's credibility. *Id.*

Navarrette filed a PCR application on June 16, 2016. As relevant to this appeal, he alleged his trial counsel was ineffective in failing to properly investigate the use of a medical expert witness to challenge the reliability of the children's statements. At the PCR trial, the court heard testimony from Dr. Katherine Jacobs. Dr. Jacobs opined that there were several factors suggesting the children's statements may not be reliable and that an expert would have been able to explain those factors at trial. Navarrette's trial counsel, Dr. Harre, and Navarrette also testified. The court denied Navarrette's application, finding in relevant part that his counsel was not ineffective because his counsel adequately investigated the case by obtaining and following Flaherty's report. Navarrette appeals.

## II.     Standard of Review

While we typically review PCR actions for the correction of errors at law, we review claims of ineffective assistance of counsel de novo. *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001).

## III.    Discussion

Navarrette claims his trial counsel was ineffective in failing to investigate and obtain an expert witness to challenge the reliability of the children's statements. "[A]ll postconviction relief applicants who seek relief as a consequence of ineffective assistance of counsel must establish counsel breached a duty and prejudice resulted." *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) (alteration in original) (quoting *Castro v. State*, 795 N.W.2d 789, 794 (Iowa 2011)). A failure to prove either element is fatal to an applicant's claim. *Id.*

We begin by examining whether Navarrette's counsel breached an essential duty. Navarrette "must demonstrate his trial attorney performed below the standard demanded of a 'reasonably competent attorney.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "We start with the presumption that the attorney performed competently and proceed to an individualized fact-based analysis." *Id.* Our supreme court has made clear:

> [I]neffective assistance is more likely to be established when the alleged actions or inactions of counsel are attributed to a lack of diligence as opposed to the exercise of judgment. Improvident trial strategy, miscalculated tactics or mistakes in judgment do not necessarily amount to ineffective counsel. When counsel makes a reasonable tactical decision, this court will not engage in second-guessing. Selection of the primary theory or theories of defense is a tactical matter.

*Id.* (alteration in original) (internal quotations and citations omitted). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91.

We determine Navarrette's trial counsel did not breach an essential duty by failing to investigate and obtain an expert witness to challenge the reliability of the children's statements. Counsel did in fact investigate the issue and obtained a report from Flaherty, a licensed independent social worker focused on child abuse. After reviewing relevant case files, Flaherty determined that the interviews with the children contained certain errors, including "a degree of non-neutrality, a lack of self-awareness of [the interviewer's] biases," and leading questions. Ultimately,

however, "there were not gross errors in the interview that appeared to impact the basis of the allegations." At the PCR hearing, Navarrette's trial counsel explained that the report led him to believe pursuing further expert testimony would not be fruitful. That strategic decision, made on the basis of Navarrette's counsel's investigation and recommendation by an experienced practitioner in the field, does not fall below the level of effective counsel.

But Navarrette takes his argument a step further on appeal. He claims the Flaherty report itself contained information that his counsel was obligated to follow-up on and investigate further. In particular, Flaherty highlighted "suspicions" of two syndromes, sexual abuse in divorce syndrome and parental alienation syndrome, that may have been relevant to Navarrette's defense.

To begin with, we question whether those specific allegations are preserved for our review.

> "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut,* 641 N.W.2d 532, 537 (Iowa 2002). "When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal." *Id.*

*Lamasters*, 821 N.W.2d at 862. Navarrette's PCR application merely alleges, "petitioner requested that trial counsel seek a medical expert witness" and "asked for an expert witness to help present a theory of defense." The issue of specific allegations in Flaherty's report was not discussed at the PCR trial. And as Navarrette notes in his appellate brief, the district court limited its discussion of this issue to counsel's efforts to obtain the report—the court's decision omits any

discussion of counsel's actions after obtaining the report. Thus, the matter was likely not raised to or decided by the district court.[2]

Even if we consider the claim, we determine it to lack merit. While Flaherty did identify the two syndromes as potentially relevant to Navarrette's defense, she also noted several factors that did not meet the syndromes' criteria. Essentially, while the circumstances surrounding the children's statements were similar to those found with either syndrome—parental figures fighting and the timing of the allegations—the children's behavior and allegations themselves comported with neither syndrome. Flaherty found A.N.'s allegations to be highly credible. And Navarrette's counsel testified that his approach to examining children differs from that of adults. There were ample reasons not to further pursue an investigation into the two syndromes.

In addition to the concerns expressed by counsel at trial, we have our own doubts as to whether expert testimony that essentially implied the children made false allegations would be admissible under our precedent. *See State v. McEndree*, No. 12-0983, 2013 WL 3458217, at *4–7 (Iowa Ct. App. July 10, 2013) (affirming the exclusion of expert testimony "that some people make false allegations of sexual abuse and that the reasons for false allegations include 'financial motivation, mental illness, and revenge or retribution'" because "the testimony indirectly rendered an opinion on the credibility or truthfulness of a witness"); *State v. Schott*, No. 10-0158, 2011 WL 2071725, at *1–2 (Iowa Ct. App.

---

[2] Navarrette does not claim his PCR counsel was ineffective, nor could he in this appeal. *See Goode v. State*, 920 N.W.2d 520, 527 (Iowa 2018) ("The applicant must assert his claim of ineffective assistance of postconviction counsel raised on appeal in a separate application for PCR.").

May 25, 2011) (affirming the exclusion of expert testimony "on general literature as to why teens might make false allegations of sex abuse," because it "amounted to a thinly-veiled attempt to impugn the credibility of [the victim]"). This offers an additional reason to find counsel was not ineffective.

**AFFIRMED.**